UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| C/F INTERNATIONAL, INC., | |
| Plaintiff, | Civil Action No. 01-3624 (WJM) |
| v. | <u>OPINION</u> |
| CLASSIC WORLD PRODUCTIONS, et al., | |
| Defendants. | |

Lindsey Taylor, Esq.
Carella, Byrne, Bain, Gilfillan,
Cecchi, Stewart & Olstein
5 Becker Farm Road
Roseland, NJ 07068

 *(Attorneys for Plaintiff)*

William Goldberg, Esq.
Court House Towers
39 Hudson Street
Hackensack, NJ 07601

 *(Attorney for Defendant)*

**MARTINI, District Judge:**

**I. INTRODUCTION**

 Plaintiff C/F International, Inc. ("C/F") brings this post-judgment motion for contempt against Defendant Darryl Payne for violating the Court's order to produce documents, falsely certifying before the Court that all responsive documents had been produced, and violating the Court's permanent injunction prohibiting sales of certain CDs. For the reasons stated below, C/F's motion is **GRANTED**.

## II. FACTUAL AND PROCEDURAL HISTORY

As the facts and procedural history have been set forth in the Court's July 28, 2004 opinion granting partial summary judgment for C/F, a brief recitation will suffice for the purposes of this Opinion. C/F brought suit against Defendants Classic World Productions, Inc. ("Classic World"), IMG International Inc. ("IMG"), and Darryl Payne[1] for failure to pay royalties for the use and exploitation of the Tom Jones musical variety shows (the "Shows"), to which Plaintiff owns the exclusive distribution rights. During discovery, C/F requested from Defendants copies of any licensing or other agreements between Defendants and third-parties involving the Shows. When Defendants failed to produce the full scope of documents requested, in or around March 2003, Magistrate Judge Hedges ordered production of the documents. When Defendants still failed to comply, C/F moved to compel production. In response, Defendants produced some additional documents, and during the motion hearing, Payne submitted a signed certification to the Court, stating he had turned over all responsive documents.

On July 28, 2004, the Court granted summary judgment in favor of Plaintiff as to the liability of Defendants and issued a permanent injunction against any future sales of the Shows at issue in the case. On December 29, 2004, the Court entered judgment in favor of Plaintiff, finding Classic World and Payne jointly and severally liable for $1,030,446; IMG and Darryl Payne jointly and severally liable for $30,000; and IMG, Classic World and Darryl Payne jointly and severally liable for $2,775. On July 30, 2005, Classic World filed a Petition in Bankruptcy

---

[1] Payne is the president and 100% shareholder of both Classic World and IMG.

under Chapter 11 in the Northern District of Illinois.[2]  On January 27, 2005, Defendants filed a notice of appeal with the Third Circuit.[3]

Acting pursuant to the judgment, C/F levied upon Classic World's personal property at Classic World's offices in Aurora, Illinois.  Among Classic World's business records, C/F alleges it found numerous documents responsive to its prior document request that Defendants had not turned over during discovery.  Specifically, C/F claims to have found ten licensing agreements worth $398,313.52 in royalties.  C/F further claims to have found thirty-two contracts for sales of Tom Jones CDs that post-dated the Court's injunction.  C/F now asks that Payne be held in contempt of court and further requests damages for the abovementioned amounts as well as attorney's fees and other punitive sanctions.

On December 20, 2005, the Court held a hearing on an order to show cause why Payne should not be held in contempt.  Payne failed to appear.  Nevertheless, the Court gave Payne a final opportunity to submit additional affidavits or exhibits in opposition to C/F's motion.  In response, Payne sent the Court a letter stating he intended to waive his opportunity to testify before the Court.  (December 21, 2005 Payne Letter.)  He further stated his intention to rest his opposition solely on his previously-filed affidavit.  *Id.*

---

[2] The Court notes that Classic World's filing of bankruptcy does not affect the Court's ability to hear the instant motion, since C/F moves solely against Payne, who has not filed for bankruptcy.

[3] The Court notes that Defendants' appeal of the Court's prior judgment does not divest the Court of jurisdiction to hear the instant motion since the Court retains jurisdiction over collateral matters such as motions for sanctions and contempt.  *See Schering Corp. v. Vitarine Pharmaceuticals, Inc.,* 889 F.2d 490, 495 (3d Cir. 1989); *Mary Ann Pensiero, Inc. v. Lingle*, 7 F.2d 90, 98 (3d Cir. 1988).

**III.  STANDARD OF REVIEW**

Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.  *U.S. v. United Mine Workers of America*, 330 U.S. 258, 304-05 (1947).  Where compensation is intended, a fine is imposed, payable to the complainant.  *Id.* at 305.

Violation of a court order constitutes contempt where: 1) a valid court order exists; 2) the defendant had knowledge of the order; and 3) the defendant disobeyed the order.  *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995).  Perjury consists of four elements: (1) a false statement; (2) given under oath; (3) made knowingly and willfully; (4) that concerns a material matter.  *See* 18 U.S.C.A. § 1621.  Perjury constitutes contempt if the perjury also obstructs the court in the performance of its duties.  *In re Michael*, 326 U.S. 224, 228 (1945).  Civil contempt must be proven by clear and convincing evidence.  *U.S. v. Pozgai*, 999 F.2d 719, 735 (3d Cir. 1993).

**IV.  DISCOVERY VIOLATION AND FALSE CERTIFICATION**

In support of its motion, C/F has submitted copies of ten licensing agreements it alleges it found among Classic World's property.  Payne does not deny he failed to turn over the documents.  His central defense is that he diligently searched for them but could not find them due to misfiling.[4]  Other than his own self-serving affidavit, Payne has failed to put forth any

---

[4] Payne says little about what his diligent search consisted of except to say that his assistant searched for "several days" for responsive documents.  (Payne Certification ¶ 9.)

support for his claim, either from his assistant, who Payne claims conducted the search, or from someone else who might have familiarity with the search effort. In contrast, C/F has submitted, along with copies of the agreements, the certification of a paralegal working for C/F. In her certification, the paralegal states that, at least with respect to six of the agreements, she found the agreements in Classic World's file cabinets; the agreements were in clearly labeled three-ring binders; and she found each agreement within one minute of looking through the relevant binder. (Aug. 2, 2005 Earle Certification ¶ 3; Sept. 30, 2005 Earle Certification ¶ 4.)

Even if the Court were inclined to believe Payne, Payne's defense amounts to little, since willfulness is not a necessary element of civil contempt. *Harley-Davidson, Inc. v. Morris,* 19 F.3d 142, 148 (3d Cir. 1994). Because damages assessed in civil contempt cases are compensatory, the mental state of the alleged violator does not impact a finding of liability. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). Based on the record before it, the Court concludes that Payne either did not conduct a reasonable search in spite of the Court order or deliberately withheld the files. In either case, Payne is liable for violating the Court discovery order, and C/F is entitled to compensation for damages it suffered as a result.[5]

To this end, C/F has submitted copies of the following ten agreements:

(1) March 1, 2000, between Classic World, Inc. and 32 Records, LLC. for a licensing fee of $30,000

(2) March 1, 2000, between BMG Entertainment International UK & Ireland Limited and IMG International for an advance of $185,000

(3) December 1, 1999, between BMG Entertainment International UK & Ireland Limited and IMG International for an advance of $100,000

---

[5] In light of this determination, the Court finds it unnecessary to pass on the question of whether Payne knowingly filed a false certification before the Court stating he had turned over all responsive documents.

(4) January 7, 1999, between Classic World Productions, Inc. and L.D.L. Corporation, for a royalty of $30,000

(5) November 20, 2000, between Classic World Productions and Komax Licensing Ltd, for a royalty of $2,500

(6) March 17, 1999, between Classic World Productions, Inc. and PLH-Partner Licensing Hamburg GmbH for an advance of $50,000[6]

(7) October 31, 1998, between Classic World Productions, Inc. and Our Video Company Limited, for an advance of $9,000 (non-redacted copy)

(8) August 22, 2001, between Varese Sarabande and Classic World, Inc., no amount listed

(9) December 31, 2002, between Classic World Productions, Inc. and Beaver Music, A.V.V. for an advance of $3,000

(10) June 1, 1998, between Classic World Productions and Gruezi-Schallplatten AG, for a license fee of $10,000.

With regard to all but agreements (1), (4), (8), and (9), C/F is entitled to the full amounts listed in the documents.[7] With regard to agreements (1) and (8), however, Payne insists these were never executed, and that Defendants never received money for them. The Court rejects Payne's argument with respect to agreement (1), since the contract contains the signatures of both parties, and nothing in the record supports the contention that the deal was later abandoned. Payne is liable to C/F for the full amount of this agreement. With regard to agreement (8), however, the Court notes that the document discovered by C/F is not in fact a licensing agreement, but merely a letter of intent. C/F has put forth no evidence to suggest that the parties subsequently signed a

---

[6] Plaintiff's brief incorrectly cites this sale as having occurred on February 1, 2004.

[7] Payne argues that agreements (3) and (6) were disclosed insofar as a discovery document entitled "Deals Made with Tom Jones" listed them and their amounts. Counsel for C/F disputes that Payne ever produced such a document. The Court notes that Payne has produced no evidence, such as a Bates-stamped copy of the document, to support his claim. Regardless, since Payne did not turn over the actual agreements, and because the Court's prior judgment in favor of C/F did not incorporate these agreements, Payne is liable for the full amounts.

contract or that the deal was otherwise consummated.  Thus, the Court finds there is insufficient proof of damages with respect to this document.

Finally, Payne argues that, with regard to agreements (4) and (9), C/F is not entitled to the full amounts of the deals, because each of these agreements covered songs for several different artists, only one of whom was Tom Jones.  C/F concedes that the total value of the agreements should be pro-rated to reflect the amount attributable to Tom Jones' productions.  (Jan. 5, 2006 Taylor Letter.)  Pro-rating agreement (4) in accordance with the percentage of Tom Jones songs covered by the agreement, the Court finds Payne liable to C/F in the amount of $21,240.00.  Pro-rating agreement (9) in accordance with the percentage of Tom Jones songs covered by the agreement, the Court finds Payne liable to C/F in the amount of $1,285.71.  In total, the Court awards C/F $409,025.71 for Payne's violation of the Court's discovery order.

## V.  PERMANENT INJUNCTION VIOLATION

With regard to the alleged violations of the permanent injunction, C/F's submissions to the Court show that Classic World engaged in thirty-two different transactions involving sales of 14,210 Tom Jones CDs.  Here again, Payne does not deny that the sales contracts reflect violations of the permanent injunction.  He instead claims he told his staff not to fill any orders for the items at issue in the injunction and, to the extent his staff filled these orders, he had no knowledge of it.  As the Court has already noted, however, it need not find a willful violation of the injunction in order to find Payne liable for civil contempt.  Payne's argument is without merit.

Payne next unconvincingly contends that orders for the CDs may have been filled with other Tom Jones CDs not subject to this lawsuit, and that the invoices simply do not reflect the substitution.  Payne offers no proof for this claim, and the Court believes they are without merit given the unambiguous documentation in the invoices.  Thus, the Court finds that, as the sole-shareholder and president of Classic World, Payne is liable for violating the injunction.  The record shows that Classic World engaged in the following sales:

> (1) 600 units each of Tom Jones Volume 1 and Tom Jones Volume 2 to Jays Records and Tapes, no price stated
>
> (2) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers, on September 15, 2004 at $3.00 per unit, for a total of $90
>
> (3)  25 units of Tom Jones Greatest Hits Volume 2 to Left Coast, on September 21, 2004, no price stated
>
> (4) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on September 24, 2004 at $3.00 per unit, for a total of $90
>
> (5) 25 units of Tom Jones Greatest Hits Volume 2 to Left Coast, on October 5, 2004, no price stated
>
> (6) 90 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on October 22, 2004 at $3.00 per unit, for a total of $270
>
> (7) 900 units of Tom Jones Greatest Hits Volume 2 to Jays Records and Tapes, on October 29, 2004, no price stated
>
> (8) 60 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on November 19, 2004 at $3.00 per unit, for a total of $180
>
> (9) 90 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on November 19, 2004 at $3.00 per unit, for a total of $270
>
> (10) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 1, 2004 at $3.00 per unit, for a total of $90
>
> (11) 60 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 9, 2004 at $3.00 per unit, for a total of $180
>
> (12) 60 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 16, 2004 at $3.00 per unit, for a total of $180
>
> (13) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 2004 at $3.00 per unit, for a total of $90

(14) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 20, 2004 at $3.00 per unit, for a total of $90

(15) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on at $3.00 per unit, for a total of $90[8]

(16) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 24, 2004 at $3.00 per unit, for a total of $90

(17) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 27, 2004 at $3.00 per unit, for a total of $90

(18) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 27, 2004 at $3.00 per unit, for a total of $90

(19) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 27, 2004 at $3.00 per unit, for a total of $90

(20) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on December 30, 2004 at $3.00 per unit, for a total of $90

(21) 30 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on January 3, 2005 at $3.00 per unit, for a total of $90

(22) 90 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on January 7, 2005 at $3.00 per unit, for a total of $270

(23) 60 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on January 07, 2004 at $3.00 per unit, for a total of $180[9]

(24) 90 units of Tom Jones Greatest Hits Volume 1 to Anderson Merchandisers on January 07, 2004 at $3.00 per unit, for a total of $270[10]

(25) 4400 units of Tom Jones Greatest Hits to Top Hits 360 on January 28, 2005, no price stated

(26) 150 units each of Tom Jones Greatest Hits Volume 1 and 150 units of Tom Jones Greatest Hits Volume 2 to Roadrunner Tapes & CDs, on March 14, 2005, apparently for free

(27) 150 units each of Tom Jones Greatest Hits Volume 1 and Tom Jones Greatest Hits Volume 2 to Hooties Outlet on March 29, 2005 at $1.25 per unit, for a total of $375 [11]

 (28) 100 units each of Tom Jones Greatest Hits Volume 1 and Tom Jones Greatest Hits Volume 2 to Spinning Disc Entertainment, no prices stated

---

[8] The date on this invoice has been obscured.  However, since Payne never produced this responsive document, and since it was not incorporated into the Court's prior judgment in favor of C/F, the Court finds Payne liable to C/F for the proceeds from this sale.

[9] Plaintiff's brief incorrectly cites this sale as having occurred on December 27, 2004.

[10] Plaintiff's brief incorrectly cites this sale as occurred on December 27, 2004.

[11] Plaintiff's brief incorrectly cites this sale as having taken place with Roadrunner Tapes & CDs instead of Hooties Outlet.

>   (29) 2600 units of Tom Jones, Volume 2 to Top Hits on April 26, 2005 at 25¢ per unit for a total of $650
>
>   (30) 2150 units of Tom Jones, Volume 2 to Top Hits, on May 12, 2005 at 90¢ per unit, for a total of $1,935
>
>   (31) 50 units of Tom Jones CD to Top Hits, on June 28, 2005, no price stated
>
>   (32) 2100 units of Tom Jones Volume 2 to Top Hits on June 28, 2005 at 25¢ per unit, for a total of $525.

For those sales that did not list a per unit price, the Court computes the prices by comparing these sales with other similar-volume sales. The comparison results in the following: (1) $3.00 per unit for 25-50 units, (2) $1.25 per unit for 100-150 units, and (3) $0.25 per unit for 600+ units. The Court thus awards C/F $8,640 for damages resulting from Payne's violations of the permanent injunction.

## VI. ATTORNEY'S FEES AND COSTS

The Court also finds Payne liable for attorney's fees and costs incurred by C/F in bringing the instant motion. To this end, counsel for C/F has submitted a certification of fees and costs. The Court has reviewed the submission and, finding the sums reasonable and accurate, awards C/F $7,858.50.

## VII. CONCLUSION

For the aforementioned reasons, the Court finds Payne in civil contempt for violating the Court's discovery order of March 2003 and for violating the permanent injunction of July 28, 2004. The Court awards total damages to C/F in the amount of $425,524.21 comprised of the following: (1) $409,025.71 resulting from Payne's failure to disclose licensing agreements, (2)

10

$8,640 for post-injunction sales of Tom Jones CDs, and (3) $7,858.50 in attorney's fees and costs.  Further, having ruled on the instant motion, the Court dismisses as moot C/F's February 6, 2006 motion to alter judgment, which was based on the same facts contained herein.  An appropriate order accompanies this Opinion.

                                                                                       s/William J. Martini

                                                                                       _____

                                                                   **William J. Martini, U.S.D.J.**

Dated: February 16, 2006